NO. 20-40359

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

PRISCILLA VILLARREAL,

*Plaintiff - Appellant*

v.

THE CITY OF LAREDO, TEXAS; WEBB COUNTY, TEXAS; ISIDRO R. ALANIZ; MARISELA JACAMAN; CLAUDIO TREVINO, JR.; JUAN L. RUIZ; DEYANRIA VILLARREAL; ENEDINA MARTINEZ; ALFREDO GUERRERO; LAURA MONTEMAYOR; DOES 1-2,

*Defendants – Appellees*

---

## REPLY BRIEF OF APPELLANT PRISCILLA VILLARREAL

---

On Appeal from the United States District Court for the Southern District of Texas, Laredo Division, Civil Action No. 5:19-CV-48

---

JT Morris
JT MORRIS LAW, PLLC
1105 Nueces Street, Suite B
Austin, TX 78701
Telephone: (512) 717-5275

Attorney for Plaintiff-Appellant Priscilla Villarreal

# TABLE OF CONTENTS

TABLE OF CONTENTS....................................................................ii

TABLE OF AUTHORITIES...........................................................iv

INTRODUCTION.............................................................................1

ARGUMENT....................................................................................3

I.   Defendants get no qualified immunity for deliberately criminalizing Villarreal's routine reporting. ...................................................3

   A. Defendants sidestep the parallels between Villarreal and the reporters in *Daily Mail*...........................................................3

   B. A reasonable officer would have known better than to criminalize Villarreal's routine reporting. ...........................................4

   C. Defendants do not contest that their deliberation deepened their objective unreasonableness. ..............................................6

II.  Defendants' reliance on Texas Penal Code § 39.06(c) does not excuse their constitutional violations.................................................7

   A. No reasonable officer would have enforced § 39.06(c). ...................7

   B. Defendants based probable cause for § 39.06(c)'s "benefit" element solely on Villarreal publishing the news.............................9

   C. Defendants could not rely on the "not been made public" element of § 39.06(c) to justify violating the Constitution..................10

   D. The City Defendants mistake prior decisions about § 39.06.........13

III. Villarreal met her pleading burden for First Amendment retaliation. ..................................................................................14

IV.  The Court should reverse the dismissal of Villarreal's selective enforcement claim. ..................................................................15

V.   Villarreal's § 1983 claim against the City alleged more than enough to survive the City's 12(b)(6) motion.........................................................17

CONCLUSION.................................................................................19

CERTIFICATE OF SERVICE.......................................................21

CERTIFICATE OF COMPLIANCE...............................................22

# TABLE OF AUTHORITIES

**Cases**

*Bartnicki v. Vopper*, 525 U.S. 514 (2001)………………………………………...5

*Carey v. Nevada Gaming Control Bd.*, 279 F.3d 873 (9th Cir. 2002) …..………………………………………………………………………. 7

*Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975) ………………..………...9

*Florida Star v. B.J.F*, 491 U.S. 524 (1989)…………………..………...passim

*Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016)……………17, 19

*Hernandez v. Mesa*, 137 S. Ct. 2003 (2017)……………………………...10

*Hope v. Pelzer*, 536 U.S. 730 (2002)…………………………………….7

*Houchins v. KQED, Inc.*, 438 U.S. 1 (1978)……………………………...6

*Innovative Database Sys. v. Morales*, 990 F.2d 217 (5th Cir. 1993)………9

*Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002)………..........................15

*McLin v. Ard,* 866 F.3d 682 (5th Cir. 2017)…………………………….7

*Mink v. Knox*, 613 F.3d 995 (10th Cir. 2010)………………………….7

*Nieves v. Bartlett*, 139 S. Ct. 1715 (2019)…………………………….17

*New York Times Co. v. United States,* 403 U.S. 713 (1971)…………….12

*Reyna v. State*, No. 13-02-00499-CR, 2006 WL 20772 (Tex. App.—Corpus Christi Jan. 5, 2006)……………………………………………13

*Sandhul v. Larion*, 119 F.3d 1250 (6th Cir. 1997)…………………….7

iv

*Smith v. Daily Mail Pub. Co.*, 443 U.S. 97 (1979)..................…......passim

*Taylor v. Riojas*, No. 19-1261, _S. Ct_ (Nov. 2, 2020)........................7

*Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017)…................................6

*Tidwell v. State,* No. 08-11-00322-CR, 2013 WL 6405498 (Tex. App.—El Paso Dec. 4, 2013)…...................................................................13

*Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000)...........................17

*Wayte v. United States*, 470 U.S. 598 (1985)…...................................7

## Statutes

Tex. Gov. Code § 552.007…..........................................................12

Tex. Gov. Code § 552.010…..........................................................12

Tex. Gov. Code § 552.352…..........................................................12

Tex. Penal Code. § 39.06…........................................…......passim

**INTRODUCTION**

As part of her local news reporting, Priscilla Villarreal asked a police officer for facts about a public suicide and a fatal car wreck. The officer freely told Villarreal those facts, which she published. Defendants later investigated and arrested Villarreal for this routine reporting.

Any reasonable official would have known this violated Villarreal's First and Fourth Amendment rights. So too for that matter would have any person with a passing knowledge of American civics

Still, Defendants argue their reliance on Texas Penal Code § 39.06(c) excused their retaliation against Villarreal's reporting. But it did not. Indeed, decades of decisions from the Supreme Court and other courts establish Defendants could not have hidden behind the pretext of a statute to arrest Villarreal for no more than using routine reporting techniques to gather and publish information from a government official.

In the end, Defendants cast no doubt on the bottom line—a reasonable officer would have known any enforcement of § 39.06(c) against Villarreal would violate the Constitution. Even more so if the officer had months to consider the unlawfulness of targeting Villarreal, like Defendants did. And so Defendants do not get qualified immunity for

retaliating against Villarreal's candid reporting. For that reason, the Court should reverse the dismissal of Villarreal's First and Fourth Amendment claims.

Nor should Defendants escape singling out Villarreal for arrest under a neglected statute just because they disliked her candid reporting. A different result would put every American journalist at risk from selective arrest under pretextual statutes. And so the Court should also reverse the dismissal of Villarreal's selective enforcement claim. Especially because Defendants merely parrot the district court's errors overlooking Villarreal's allegations and restricting the class of similarly situated reporters.

Finally, the City's arguments on Villarreal's § 1983 claim against the City overlook this Court's prior decisions and Villarreal's allegations. Villarreal detailed a policy or custom targeting her journalism, including examples of harassment and her arrest. And she alleged how the city council and police chief encouraged enforcement of the policy. That is more than enough to warrant reversal on Villarreal's §1983 claim against the City.

# ARGUMENT

## I. Defendants get no qualified immunity for deliberately criminalizing Villarreal's routine reporting.

Defendants fill their briefs with arguments about reliance on Tex. Penal Code § 39.06(c). As Villarreal explains later, these arguments are unpersuasive. But more to the point, Defendants miss the main reason why they had no qualified immunity. And that is a reasonable officer would have known it would violate the Constitution to arrest Villarreal for no more than gathering and publishing news from an official. Appellant Br. 29-34.

### A. Defendants sidestep the parallels between Villarreal and the reporters in *Daily Mail*.

In *Smith v. Daily Mail Pub. Co.*, the Supreme Court held the First Amendment forbid criminalizing truthful publication of a juvenile suspect's name that reporters pursuing a lead learned "simply by asking various witnesses, the police, and an assistant prosecuting attorney…" 443 U.S. at 99, 105-06. In the same way, Villarreal had leads about a public suicide and a fatal car accident, asked Officer Goodman for facts about those leads, and then truthfully published what Officer Goodman told her. ROA.166 [¶¶ 65-66]; ROA.170 [¶89]. Simply put, Villarreal used

the same routine reporting techniques as the reporters in *Daily Mail* to lawfully get information from an official.

Yet Defendants do not address these parallels.

## B. A reasonable officer would have known better than to criminalize Villarreal's routine reporting.

In effect, Defendant's silence concedes that *Daily Mail* would have given a reasonable officer fair warning that the First Amendment protected Villarreal's routine newsgathering and publication. 443 U.S at 103-104. For that reason, a reasonable officer would have understood he lacked any basis to investigate and arrest Villarreal. And as Villarreal shows, other Supreme Court decisions like *Florida Star v. B.J.F.* confirm why Defendants were objectively unreasonable. Appellant Br. 28-29, 33-34 (citing *Fla. Star v. B.J.F.*, 491 U.S. 524, 535-36 (1989) and other cases).

Defendants fail to distinguish these decisions. For example, Defendants suggest that the cases Villarreal relies on apply only when a governmental body purposely makes information publicly available. City Br. 27-28; County Br. 29-30.[1] But the Supreme Court shot down this argument in *Daily Mail*, instructing that it was "not controlling" whether

---

[1] For brevity, Villarreal refers to the brief of Alaniz and Jacaman as "County Br.," and the brief of Laredo police officers, Does 1-2, and the City of Laredo as "City Br."

"the government itself provided or made possible press access to the information" when the reporters "relied upon routine newspaper reporting techniques to ascertain the identity of the alleged assailant." *Daily Mail*, 443 U.S. at 103. So even if Goodman violated a law or duty by giving Villarreal information, the First Amendment still protected Villarreal's right to ask for and learn the information from Goodman as part of reporting the news. *Id; see also* Texas Press Association, et al. Amicus Br. 5-6, citing *Bartnicki v. Vopper*, 525 U.S. 514, 525 (2001).

Defendants also contend that *Florida Star* and *Daily Mail* are limited to their facts. County Br. 29. But the Supreme Court's chief caution was against reading these decisions too broadly as finding an absolute right to truthful publication or unfettered press access. *Florida Star*, 491 U.S. at 532, 541; *Daily Mail*, 443 U.S. at 106. Even more to the point, Defendants show nothing limiting *Daily Mail's* warning that the state cannot justify criminalizing routine reporting methods used to gather newsworthy facts from officials for publication. *Daily Mail*, 443 U.S. at 103-04. Nor do they challenge *Florida Star's* teaching that "[w]here information is entrusted to the government, a less drastic means than punishing truthful publication almost always exists for guarding

against the dissemination of private facts." 491 U.S. at 534-35.

The bottom line is these Supreme Court decisions clearly established First Amendment rights to gather news by asking officials for information and to accurately publish what those officials give. To that, this Court added "[t]here is 'an undoubted right to gather news from any source by means within the law.'" *E.g.*, *Turner v. Driver*, 848 F.3d 678, 688 (5th Cir. 2017) ("[t]here is (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978)). These all would have given a reasonable officer fair warning that he had no basis to investigate or arrest Villarreal.

In the end, Defendants cannot overcome these central reasons for why the Court should reverse on qualified immunity.

## C. Defendants do not contest that their deliberation deepened their objective unreasonableness.

Villarreal explains why qualified immunity should not be available to officials who deliberately violate the Constitution. Appellant Br. 23-24. Defendants do not contest this in their briefs. Nor do they contest that their deliberate targeting of Villarreal over months highlights why they have no qualified immunity. *See* Appellant Br. 38-39. Defendants' silence on this only strengthens Villarreal's showing of no qualified immunity.

## II. Defendants' reliance on Texas Penal Code § 39.06(c) does not excuse their constitutional violations.

### A. No reasonable officer would have enforced § 39.06(c).

Defendants suggest that because a court had not yet invalidated § 39.06(c) when they arrested Villarreal, they could reasonably rely on it and thus have qualified immunity. City Br. 20. But Defendants overlook that courts have repeatedly denied qualified immunity when a reasonable official would have known he could not enforce an authorizing statute without violating the Constitution. *E.g, McLin v. Ard,* 866 F.3d 682, 695 (5th Cir. 2017); *Sandhul v. Larion,* 119 F.3d 1250, 1256-57 (6th Cir. 1997); *Carey v. Nevada Gaming Control Bd.,* 279 F.3d 873, 882 (9th Cir. 2002). So too do they overlook that officials cannot base probable cause on no more than protected speech. *Mink v. Knox,* 613 F.3d 995, 1009-10 (10th Cir. 2010) ("a government official may not base her probable cause determination on an 'unjustifiable standard,' such as speech") (citing *Wayte v. United States,* 470 U.S. 598, 608 (1985)).

And here, basic First Amendment principles[2] and decades of

---

[2] To this end, the Supreme Court recently confirmed the principle from *Hope v. Pelzer* that an "obvious" constitutional violation can overcome a qualified immunity defense. *Taylor v. Riojas*, No. 19-1261, _S. Ct_, 2020 U.S. LEXIS 5193, at *2 (Nov. 2, 2020) (per curiam) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002))

Supreme Court decisions would have given a reasonable official fair warning he could not arrest Villarreal just for exercising established First Amendment rights. Appellant Br. 19-23, 31-34, 53-54. So in turn, that reasonable officer would have known he could not enforce § 39.06(c) against Villarreal without violating the Constitution. *Id.* Likewise, amici curiae explain how Defendants could not have reasonably relied on § 39.06(c) because it was patently unconstitutional. Institute for Justice Amicus Br. 8-9, 17-19; Texas Press Assoc. Amicus Br. 5. In short, Defendants were objectively unreasonable enforcing § 39.06(c), even if a court had yet to invalidate it.[3]

Finally, Defendants overlook a glaring problem with § 39.06(c)—it criminalized expressive conduct on its face, including simply asking officials for facts. As Villarreal explains, this would have given a reasonable officer even more reason not to enforce § 39.06(c). App. Br. 39-40; *see also* Institute of Justice Amicus Br. 17-19 (explaining why § 39.06(c) is "patently unconstitutional because it criminalizes asking

---

[3] The City Defendants claim that "Plaintiff and amicus curiae spend considerable effort reminding the Court that Section 39.06 was held unconstitutional by a state district court during Plaintiff's criminal trial." City Br. 20. But neither Villarreal nor amici curiae lean on the state court's holding. In fact, Villarreal and amici curiae combined only mention the Texas court's holding three times. Appellant Br. 11; Texas Press Assoc. Amicus Br. 5, 17.

government officials for information.") So if anything, the face of § 39.06(c) is another reason for why Defendants' reliance on §39.06(c) was objectively unreasonable.

### B. Defendants based probable cause for § 39.06(c)'s "benefit" element solely on Villarreal publishing the news.

Defendants argue they did not criminalize Villarreal's publication of the information Officer Goodman volunteered. County Br. 19; City. Br. 32. But this is wrong for the same reason the district court erred making the same conclusion. Appellant Br. 36. Even though § 39.06(c) does not mention "publishing," the only basis on which Defendants asserted that Villarreal "intended to benefit" was her "release" of what Officer Goodman disclosed because it "gained her popularity in Facebook." ROA.170 [¶92].

In other words, Defendants determined probable cause on Villarreal's publication of newsworthy facts a police officer volunteered. So contrary to Defendants' argument, it matters here that the First Amendment forbids states to prohibit "the commercial publication of matters of public record." *Innovative Database Sys. v. Morales*, 990 F.2d 217, 221-22 (5th Cir. 1993) (citing *Fla. Star*, *Daily Mail*, and *Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975)); *see* County Br. 28. And to that end,

no reasonable officer could have found probable cause based on Villarreal publishing information to gain readership.

Defendants also err, like the district court did, contending that Villarreal's allegations show probable cause for the "benefit" prong. County Br. 25; City Br. 22, 34-35. Although Villarreal alleged that she sometimes gets a free meal or a small fee for promoting a local business [ROA.437], there is nothing in the record suggesting any of Defendants knew this. Appellant Br. 35-36. Nor would a reasonable officer have had the benefit of hindsight. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (per curiam) ("[F]acts an officer learns after the incident ends" are not relevant to qualified immunity).

### C. Defendants could not rely on the "not been made public" element of § 39.06(c) to justify violating the Constitution.

The Court should refuse Defendants' arguments based on §39.06(c)'s requirement that information solicited or received "has not been made public." City Br. 22-26; County Br. 27-28. First, Defendants do not address the chief issue—that clearly established First Amendment rights barred Defendants from using the pretext of "not been made public" to arrest Villarreal. *See* Appellant Br. 37-38. That alone shows Defendants' arguments are beside the point.

And good sense defeats Defendants' argument that a reasonable officer would have arrested Villarreal because she did not make a written request for information under the Texas Public Information Act (TPIA). City Br. 24-25; County Br. 26. Suppose a curious bystander asked police leaving a crime scene what happened. Or consider a reporter who asked the mayor what occurred in a closed-door city council meeting. No ordinary citizen would think officials could arrest either person just because they did not make a written TPIA request. But still, Defendants confound a written request for records with merely asking officials for facts about public matters.

Defendants also miss the point arguing that various TPIA exceptions justified their investigation and arrest of Villarreal. City Br. 22-26; County Br. 27-28. As amicus curiae points out, nothing in the TPIA excepts ***information*** from the public's right to know—including facts learned simply by asking a government employee. Texas Press Assoc. Amicus Br. 14-15. By contrast, the TPIA and its exemption framework are only about ***records***. *Id.* In any event, Defendants make little effort to explain why any exception would have applied to Villarreal's conversation with Goodman, instead presuming only that a set of

exceptions "may" have applied. City Br. 24.

And prior decisions highlight why the TPIA exception framework does not excuse Defendants' actions. *See Daily Mail Pub. Co.*, 443 U.S. at 99, 104-05; ROA.166 [¶¶ 65-66]. Indeed, it makes little sense that Villarreal or any other citizen would bear the burden of knowing whether a TPIA exception applies just to avoid arrest under § 36.09(c) for asking an official for information. As the Supreme Court reasoned in *Florida Star*, if the government has information that may implicate compelling privacy or similar interest, the government alone bears the burden to safeguard that information. *Fla. Star*, 491 U.S. at 534-35.

With that in mind, it is no surprise that the TPIA puts the burden on the government to safeguard "confidential information" in its records. *See, e.g.*, Tex. Gov. Code §§ 552.007, 552.010, 552.352. And so here the duty to maintain confidentiality, if any, started and ended with Officer Goodman. That is why the Court should reject Defendants' claim that confidentiality exceptions justified arresting Villarreal. City Br. 34-35; *see New York Times Co. v. United States,* 403 U.S. 713 (1971) (finding a newspaper had a right to publish sensitive but newsworthy information a government source provided).

### D. The City Defendants mistake prior decisions about § 39.06.

The City Defendants argue that two cases "successfully used by the State of Texas to prosecute misuse of public information" show they reasonably relied on § 39.06(c). City Br. 20, Add. 8-28. But neither case is relevant because they cover only convictions under subsections (a)-(b) of § 39.06. *Reyna v. State*, No. 13-02-00499-CR, 2006 WL 20772, *2 (Tex. App.—Corpus Christi Jan. 5, 2006, pet. ref'd. as untimely filed) (affirming conviction under § 39.06(a)); *Tidwell v. State,* No. 08-11-00322-CR, 2013 WL 6405498, *11 (Tex. App.—El Paso Dec. 4, 2013, pet. ref'd.) (affirming conviction under § 39.06(b)).

Subsections (a)-(b) criminalize an ***official's*** disclosure or use of government information for pecuniary gain or to harm another. City Br. Add. 2. These subsections follow the obvious purpose of § 39.06 to deter and penalize things like bid-rigging and influence peddling. But they are strikingly different from subsection (c), which targets mere asking for and learning information from officials. To that end, no reasonable officer could have thought *Reyna* or *Tidwell* applied to Villarreal's circumstances.

## III. Villarreal met her pleading burden for First Amendment retaliation.

Defendants' argument that Villarreal did not plead a First Amendment retaliation claim fails for three reasons. First, Defendants repeat their arguments that Villarreal "mischaracterizes the basis for her arrest" and that they had arguable probable cause. City Br. 27, 31-32; County Br. 35. Yet Villarreal shows why the Court should reject both these arguments. Appellant Br. 27-38; *see* pp. 8-9, *supra*. What is more, Defendants do not address Villarreal's claim that they lacked any basis to even investigate her.[4] *See* Appellant Br. 49-54.

Second, Defendants mistake the significance of Villarreal's allegations in Paragraph 54 of her first amended complaint detailing Defendants' pattern of harassment. County Br. 35. Villarreal is not asserting on appeal that any of those incidents in isolation was a First Amendment retaliation. Rather, that harassment revealed Defendants' motivation to silence Villarreal that led to the investigation and arrest. Appellant Br. 41, 52; ROA.163 [¶54].

---

[4] The City frames Villarreal's First Amendment retaliation claims, as "retaliatory criminal prosecution." City Br. 29, 31. That is incorrect. Villarreal's claims were only for retaliatory investigation and arrest.

And finally, the City Defendants err claiming Villarreal did not show a chilling injury because the investigation and arrest "did not chill Plaintiff herself, who has continued her investigative methods after her arrest and release." City Br. 31. As the City Defendants concede, a chilling injury does not require the injured party to stop exercising her First Amendment rights. City Br. 30, citing *Keenan v. Tejada*, 290 F.3d 252, 259 (5th Cir. 2002). And at any rate, the complete deprivation of liberty from a retaliatory arrest would chill the speech of any person of ordinary firmness. Villarreal's allegations about fear of more retaliation and physical and mental distress confirm a chilling injury. ROA.182-83.

## IV. The Court should reverse the dismissal of Villarreal's selective enforcement claim.

In her principal brief, Villarreal details why the district court erred dismissing her selective enforcement claim. Appellant Br. 44-49. Yet rather than address Villarreal's arguments, Defendants rest largely on the district court's error in overly limiting the similarly situated class. City Br. 26-28. County Br. 23, 32-34. That is one reason the Court should reject Defendants' arguments on selective enforcement.

The Court should also refuse Defendants' suggestion that Villarreal's allegations were merely conclusory. City Br. 37-38; County

Br. 32-33. By contrast, Villarreal specified how Defendants singled her out, despite knowing (1) that local authorities had never enforced § 39.06(c) and (2) that others regularly asked for and got information from local police officers. ROA.174 [¶¶106-07]; ROA.187 [¶¶177-78]; *see* Appellant Br. 47-48. And contrary to the City Defendants' arguments, Villarreal also detailed how Defendants' animus toward her style and content of her reporting drove them to single out Villarreal for arrest under § 39.06(c). ROA.162-63; ROA.169-70 [¶¶84-85]; ROA.187-89. Likewise, Villarreal specified how Defendants Alaniz and Jacaman directed the effort to find a statute under which to single out Villarreal. ROA.175 [¶¶112-113]. This disproves the County Defendants' claim that "Villarreal fails to allege any specific facts concerning Alaniz and Jacaman." County Br. 33.

Finally, the City Defendants argue that the two prior decisions about § 39.06 gave Defendants a rational basis under which to single out Villarreal, even though local authorities had never enforced the statute. City. Br. 37-38. But again, those prior decisions did not involve subsection (c). *See* pp. 12-13, *supra*. To that end, those prior decisions would not have informed Defendants or any reasonable officer whether

they could reasonably rely on § 39.06(c) to target Villarreal. Instead, good sense would have led a reasonable officer not to enforce a law against Villarreal that local authorities never enforced against other journalists.

For these reasons, the Court should reverse the dismissal of Villarreal's selective enforcement claim. *E.g.*, *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019).

## V. Villarreal's § 1983 claim against the City alleged more than enough to survive the City's 12(b)(6) motion.

None of the City's arguments undercut the sufficiency of Villarreal's § 1983 municipal liability claim against the City. First, it does not matter whether Villarreal "failed to identify an official policymaker." City Br. 42. To beat a motion to dismiss, a plaintiff does not have to identify a specific policymaker. *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016).

Rather, Villarreal needed only to "allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Id.* at 280. She did this. For instance, Villarreal detailed an official City policy or custom intended to retaliate against her because of her citizen journalism that was often unflattering to the City. ROA.195 [¶¶216-17]. And to that, she detailed examples of

City officials carrying out this policy over a short time, including her unconstitutional investigation and arrest. ROA.158; ROA.162-163; ROA.166 [¶68]. These defeat the City's claim that Villarreal did not state an official City policy or show a constitutional violation. City Br. 44-45.

Villarreal's allegations also refute the City's suggestion that she did not show a nexus between the alleged policy of retaliation and a final policymaker. As the City explains, the city council is its primary final policymaker. City Br. 44. And Villarreal detailed how the city council spurred on Villarreal's investigation and arrest, and how it endorsed harassment from LPD officers. ROA.165 [¶62]; ROA.195 [¶220]; ROA.196 [¶222]. That the City's police chief Defendant Treviño directed and oversaw Villarreal's unlawful arrest also reveals a link between the policy and the city council. ROA.165 [¶61]; ROA.174 [¶109-110]; ROA.196-197 [¶¶223, 226]; *see also Groden*, 826 F.3d at 285-86.

So at the very least, Villarreal's allegations permitted a favorable inference that the Laredo city council ratified or promulgated a policy or custom of retaliation that deprived Villarreal of her constitutional rights. On that basis, the Court should reverse the district court's denial of Villarreal's § 1983 claim against the City.

## CONCLUSION

Learning about public affairs by asking officials for information is a vital part of self-government and essential to freedom of speech and of the press. So too is publishing information that government officials volunteer. Indeed, one would be hard-pressed to find an ordinary citizen who believes officials can arrest someone just because she asked a government employee for newsworthy facts intending to publish them. And so it is no surprise the Supreme Court has rejected attempts both to criminalize reporting facts learned by asking officials and to penalize the press or other citizens when the government mishandles information.

In the end, the district court erred finding that Defendants had qualified immunity for criminalizing Villarreal's essential exercises of freedom of speech and of the press. And it erred dismissing Villarreal's claims that seek to hold Defendants accountable for depriving her constitutional rights.

This Court should reverse and remand.

Dated: October 19, 2020

Respectfully submitted,

/s/ JT Morris
JT Morris
JT Morris Law, PLLC
1105 Nueces Street, Suite B
Austin, TX 78701
Telephone: (512) 717-5275
Fax: (512) 582-2948
E-mail: jt@jtmorrislaw.com

Attorney for Plaintiff-Appellant
Priscilla Villarreal

## CERTIFICATE OF SERVICE

I certify that on October 19, 2020, a copy of this brief was served through the court's electronic filing system upon counsel for all parties to this proceeding:

J. Eric Magee
e.magee@allison-bass.com
ALLISON, BASS & MAGEE, LLP
A.O. Watson House
402 W. 12th Street
Austin, Texas 78701
Telephone: (512) 482-0701

Attorneys for Defendants-Appellees Webb County, Texas; Isidro R. Alaniz, and Marisela Jacaman

William M. McKamie
mmckamie@toase.com
Alicia K. Kreh
akreh@toase.com
TAYLOR OLSON ADKINS SRALLA & ELAM LLP
13750 San Pedro Ave., Suite 555
San Antonio, Texas 78232
Telephone: (210) 546-2122

Attorneys for Defendants-Appellees the City of Laredo, Texas; Claudio Trevino, Jr.; Juan L. Ruiz; Deyanria Villarreal; Enedina Martinez; Alfredo Guerrero; Laura Montemayor; and Does 1-2

/s/ JT Morris
JT Morris

# CERTIFICATE OF COMPLIANCE

### With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,720 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Local Rule 32.2.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Local Rule 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14-point Century Schoolbook font for text, and 12-point Century Schoolbook font for footnotes.

/s/ JT Morris
JT Morris
Attorney for Plaintiff-Appellant
Priscilla Villarreal
Dated: October 19, 2020
