NO. 20-40359
# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

PRISCILLA VILLARREAL,

*Plaintiff-Appellant*

v.

THE CITY OF LAREDO, TEXAS; WEBB COUNTY, TEXAS; ISIDRO
R. ALANIZ; MARISELA JACAMAN; CLAUDIO TREVINO, JR.; JUAN
L. RUIZ; DEYANRIA VILLARREAL; ENEDINA MARTINEZ;
ALFREDO GUERRERO; LAURA MONTEMAYOR; DOES 1-2,

*Defendants-Appellees*

## APPELLANT'S RESPONSE TO
## PETITION FOR REHEARING EN BANC OF DEFENDANTS-
## APPELLEES ISIDRO R. ALANIZ and MARISELA JACAMAN

On Appeal from the United States District Court for the Southern
District of Texas, Laredo Division, Civil Action No. 5:19-CV-48
Hon. John A. Kazen Presiding

JT Morris
  *Counsel of Record*
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
700 Pennsylvania Ave. S.E., Ste. 340
Washington, D.C. 20003
Tel:  (215) 717-3473
jt.morris@thefire.org

Darpana Sheth
Conor T. Fitzpatrick
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
510 Walnut Street, Ste. 1250
Philadelphia, PA 19106
Tel:  (215) 717-3473
darpana.sheth@thefire.org
conor.fitzpatrick@thefire.org

*Attorneys for Plaintiff-Appellant Priscilla Villarreal*

# SUPPLEMENTAL CERTIFICATE OF INTERESTED PARTIES

The cause number and style of the case is No. 20-40359, *Priscilla Villarreal v. City of Laredo, Texas, et al.* (USDC Civil No. 5:19-CV-48, Southern District of Texas).

In addition to those persons and entities identified in the parties' briefs and the *amici curiae* briefs, the undersigned counsel of record certifies that the following additional listed persons and entities described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

## Counsel for Plaintiff-Appellant Priscilla Villarreal

JT Morris
Darpana Sheth
Conor T. Fitzpatrick
**Foundation for Individual Rights and Expression**
510 Walnut Street, Ste. 1250
Philadelphia, PA 19106

The undersigned also certifies under Fed. R. App. P. 26.1(a) that Foundation for Individual Rights and Expression (FIRE) is not a publicly held corporation, has no parent corporation, and that no publicly held corporation owns 10 percent or more of FIRE stock.

Respectfully submitted,

/s/ JT Morris
JT Morris
Counsel of record for
Plaintiff-Appellant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ v

INTRODUCTION ................................................................................ 1

ARGUMENT ..................................................................................... 4

I.    The Panel Majority Faithfully Applies the Supreme Court's
      "Fair Warning" Rule in Denying the County Defendants
      Qualified Immunity............................................................... 4

II.   The Panel Majority Correctly Found That No Reasonable
      Officer Would Have Enforced Texas Penal Code § 39.06(c) to
      Criminalize Villarreal's Routine Journalism.................................. 9

      A.    The panel majority is correct that no reasonable official
            would have relied on the statute's "intent to benefit"
            element to criminalize Villarreal's journalism. .................... 10

            1.    Villarreal's reporting did not meet the statute's
                  "intent to benefit" element. ........................................ 11

            2.    It was obviously unconstitutional to enforce
                  § 39.06(c) against Villarreal. ...................................... 12

      B.    *Florida Star* and other authority demonstrate that no
            reasonable official would have relied on the "not been
            made public" prong of the statute to justify arresting
            Villarreal. ............................................................. 13

III.  The Panel Majority Correctly Held That the Independent
      Intermediary Doctrine Does Not Shield Defendants from
      Liability................................................................. 15

IV.   The Panel Majority Correctly Upheld Villarreal's Selective
      Enforcement Claim. ...................................................... 16

CONCLUSION ................................................................................ 20

CERTIFICATE OF COMPLIANCE ..................................................... 22

CERTIFICATE OF SERVICE ................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ............................................................. 4

*Ballentine v. Tucker*,
28 F.4th 54 (9th Cir. 2022) .................................................. 6

*Branzburg v. Hayes*,
408 U.S. 665 (1972) ............................................................ 13

*Hernandez v. Mesa*,
137 S. Ct. 2003 (2017) ........................................................ 12

*Hoggard v. Rhodes*,
141 S. Ct. 2421 (2021) ........................................................ 8

*Hope v. Pelzer*,
536 U.S. 730 (2002) ................................................ 2, 4, 5, 6

*Kinney v. Weaver*,
367 F.3d 337 (5th Cir. 2004) .......................................... 2, 5

*Leonard v. Robinson*,
447 F.3d 347 (6th Cir. 2007) ............................................. 9

*Lindquist v. City of Pasadena, Tex.*,
669 F.3d 225 (5th Cir. 2012) ............................................ 17

*Malley v. Briggs*,
475 U.S. 335 (1986) ............................................................ 15

*McCoy v. Alamu*,
141 S. Ct. 1364 (2021) ........................................................ 6

*Mink v. Knox*,
613 F.3d 995 (10th Cir. 2010) ........................................... 15

*Morrow v. Meachum*,
 917 F.3d 870 (5th Cir. 2019) ........................................................ 7

*Mullenix v. Luna*,
 577 U.S. 7 (2015) ........................................................ 7

*New York Times Co. v. United States*,
 403 U.S. 713 (1971) ........................................................ 13

*Nieves v. Bartlett*,
 139 S. Ct. 1715 (2019) ........................................................ 19

*Rountree v. Dyson*,
 892 F.3d 681 (5th Cir. 2018) ........................................................ 17

*Sause v. Bauer*,
 138 S. Ct. 2561 (2018) ........................................................ 6

*Smith v. Daily Mail Publishing Co.*,
 443 U.S. 97 (1979) ........................................................ 3, 14

*Swiecicki v. Delgado*,
 463 F.3d 489 (6th Cir. 2006) ........................................................ 15

*Taylor v. Riojas*,
 141 S. Ct. 52 (2020) ........................................................ 6

*The Florida Star v. B.J.F*,
 491 U.S. 524 (1989) ........................................................ 3, 14

*Thompson v. Ragland*,
 23 F.4th 1252 (10th Cir. 2022) ........................................................ 6

*Tyson v. County of Sabine*,
 42 F.4th 508 (5th Cir. 2022) ........................................................ 6

*Villarreal v. City of Laredo, Tex.*,
 44 F.4th 363 (5th Cir. 2022) ........................................................ *passim*

**Statutes**

42 U.S.C. § 1983 ................................................................. 18

Tex. Penal Code § 39.06(c) ............................................ *passim*

**INTRODUCTION**

Priscilla Villarreal is a south Texas citizen journalist who often has been a thorn in the side of local government officials because of her unfiltered and honest reporting about local government. Hoping to silence her, local law enforcement—including Defendants Alaniz and Jacaman—dug up an obscure provision of the Texas Penal Code to arrest Villarreal. But the only basis for the arrest was that Villarreal asked a police officer questions while gathering and reporting the news. Defendants criminalized routine journalism—a shocking response that no reasonable official would have taken. The panel majority correctly denied qualified immunity for such an obvious constitutional violation.

In seeking en banc rehearing, the County Defendants do not point to any ruling from the Supreme Court or this Court that conflicts with the panel majority's decision denying them qualified immunity for orchestrating Villarreal's arrest. Instead, they argue the decision "creates confusion" about what makes a constitutional violation obvious. County Defs.' Pet. for Reh'g En Banc ("County PFR") 12–13. But that misdirection ignores the panel majority's careful adherence to the Supreme Court's "fair warning" standard—something this Court has

branded "the central concept" of qualified immunity. *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (citing *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

The panel majority aptly summed up why the County Defendants had fair warning that arresting Villarreal for basic newsgathering would violate the Constitution: "If the First Amendment means anything, it surely means that a citizen journalist has the right to ask a public official a question, without fear of being imprisoned." *Villarreal v. City of Laredo, Tex.*, 44 F.4th 363, 367 (5th Cir. 2022). As the panel majority correctly reasoned, no reasonable officer would have arrested Villarreal for asking a police officer questions about newsworthy matters, let alone rely on an obscure section of the Texas Penal Code—§ 39.06(c)—to justify the arrest. This is especially true because a reasonable officer—having months to deliberate about arresting Villarreal, like the County Defendants did— would have had plenty of time to consider the plain unconstitutionality of that arrest. For these reasons, the County Defendants' arguments about "confusion" do not show any basis for en banc review.

Nor do the County Defendants' arguments about the various elements of Tex. Penal Code § 39.06(c) justify en banc review. The panel

majority correctly found that no reasonable officer could have found the law's "intent to benefit" element applied to Villarreal's routine journalism. And Supreme Court decisions like *The Florida Star v. B.J.F.*[1] and *Smith v. Daily Mail Publishing Co.*[2] show the County Defendants could not arrest Villarreal just because § 39.06(c) prohibits asking for and receiving government information that "has not been made public." Indeed, there is little reason to ask the government for information that is already public.

No reasonable officer would have presented an arrest warrant to a magistrate claiming the exercise of clearly established First Amendment rights constituted probable cause under § 39.06(c) (or any other law). To that end, the panel majority correctly held that the independent intermediary doctrine does not absolve the County Defendants from violating the Constitution. There is no reason for en banc review on this issue.

Finally, there is no reason for en banc review on the panel majority's holding that Villarreal sufficiently pled a selective

---

[1] 491 U.S. 524 (1989)

[2] 443 U.S. 97 (1979)

enforcement claim. Harmonizing this Court's precedent and Rule 12(b)(6) standards, the panel majority found it sufficient that Villarreal showed that no other journalists had ever faced arrest under § 39.06(c), even though they also asked for sensitive information that local officials considered "non-public." Not only will denying en banc rehearing uphold the panel majority's correct decision, but it also will help ensure that other speakers have a remedy against officials who abuse criminal laws to single out their critics.

For these reasons, Villarreal asks the Court to deny the County Defendants' petition for en banc rehearing.

## ARGUMENT

### I.   The Panel Majority Faithfully Applies the Supreme Court's "Fair Warning" Rule in Denying the County Defendants Qualified Immunity.

As the panel majority correctly observed, the Supreme Court has repeatedly held that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *Villarreal*, 44 F.4th at 370 (alteration in original) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (affirming that "clearly established law" does

not require "a case directly on point"). And so, as the panel majority correctly points out, this Court has looked to *Hope* in confirming that for qualified immunity "[t]he central concept is that of 'fair warning.'" *Villarreal*, 44 F.4th at 370 (quoting *Kinney*, 367 F.3d at 350 (quoting *Hope*, 536 U.S. at 740)).

The panel carefully applied this framework in concluding "[t]he doctrine of qualified immunity does not always require the plaintiff to cite binding case law involving identical facts. An official who commits a patently 'obvious' violation of the Constitution is not entitled to qualified immunity." *Villarreal*, 44 F.4th at 371 (citing *Hope*, 536 U.S. at 745). On that basis, the panel majority created no "confusion" about obvious constitutional violations in the qualified immunity context, as the County Defendants argue. County PFR 13–14. By contrast, the panel majority's reasoning plainly shows how the Supreme Court's "fair warning" and "obvious clarity" principles from *Hope* guide the qualified immunity analysis.

Indeed, the panel majority points first to *Hope* in its analysis, observing that the Supreme Court denied qualified immunity to officials who handcuffed a prisoner to a hitching post in the sun because of the

"[t]he obvious cruelty inherent" in the act. 536 U.S. at 745. It also points to more recent decisions from the Supreme Court finding obvious constitutional violations even where plaintiff offered no factually similar precedent. *Villarreal*, 44 F.4th at 370 (citing *Taylor v. Riojas*, 141 S. Ct. 52 (2020) (*per curiam*) (denying qualified immunity where it was obvious that keeping a prisoner in feces-filled jail cells for days violated the constitution);[3] *Sause v. Bauer*, 138 S. Ct. 2561 (2018) (*per curiam*) (denying qualified immunity where it was obvious that ordering a person to stop praying violated the First Amendment)). This faithful adherence to settled Supreme Court precedent on the obvious violation principle negates the County Defendants' suggestion of "confusion."[4]

---

[3] Shortly after issuing its *Riojas* decision, the Supreme Court pointed to *Riojas* in issuing a grant, vacate, and remand on this Court's grant of qualified immunity to officers who allegedly sprayed a prisoner in the face with chemicals without provocation. *McCoy v. Alamu*, 141 S. Ct. 1364 (2021) (Mem.), granting, vacating, and remanding, 950 F.3d 226 (5th Cir. 2020) (directing reconsideration "in light of *Taylor*").

[4] Like the panel majority, other circuits have faithfully followed the Supreme Court's holdings and denied qualified immunity for obvious violations of First Amendment rights. For example, the Tenth Circuit denied qualified immunity to a college administrator who punished a student after she criticized a professor over email, even though it found no precedent with identical facts. *Thompson v. Ragland,* 23 F.4th 1252, 1255–56, 1259–60 (10th Cir. 2022). Likewise, the Ninth Circuit recently denied qualified immunity to a detective after he arrested activists in retaliation for "chalking" anti-police messages on public sidewalks, despite a lack of factually identical precedent. *Ballentine v. Tucker,* 28 F.4th 54, 66 (9th Cir. 2022). And even though it is not in the First Amendment context, this Court's recent decision in *Tyson v. County of Sabine* provides another example of why officials do not have qualified immunity for obvious constitutional violations. 42 F.4th 508 (5th Cir. 2022)

Nor do the County Defendants point to any precedent that conflicts with the panel majority's holding. Although the County Defendants seem to argue *Morrow v. Meachum* conflicts with the panel majority's opinion, *see* County PFR 15–16 (citing 917 F.3d 870 (5th Cir. 2019)), it does not for two reasons. First, nothing in *Morrow* conflicts with the panel majority's fidelity to the controlling *Hope* "fair warning" standard. In fact, *Morrow* acknowledges *Hope's* teaching that fair warning—not factually identical precedent—is the cornerstone of qualified immunity. *Id.* at 875 n.5.

Second, *Morrow* centered on qualified immunity for officials involved in a fatal crash after they made a split-second decision trying to slow a speeding motorcyclist—what this Court called a "fateful seven seconds." *Id.* at 873. When police officers raise qualified immunity over split-second decisions, more factual specificity from prior holdings might be needed to show the officers had fair warning of a constitutional violation. *Mullenix v. Luna,* 577 U.S. 7, 12 (2015) (*per curiam*). But that exacting specificity is not needed to overcome qualified immunity where

---

(applying *Hope* to deny qualified immunity to an officer who coerced a person to perform nonconsensual sex acts, finding it an obvious due process violation).

officials make a deliberative decision to arrest someone for exercising clear First Amendment rights, like Defendants' orchestrated plan to arrest Villarreal. *Villarreal*, 44 F.4th at 371–72; *see also Hoggard v. Rhodes*, 141 S. Ct. 2421, 2422, (2021) (statement of Thomas, J., respecting the denial of certiorari) (questioning why speech-chilling university officials "who have time to make calculated choices about enacting or enforcing unconstitutional policies, receive the same protection as a police officer who makes a split-second decision to use force in a dangerous setting"). In those situations, officials have time to consider the constitutional principles that restrain their actions. Indeed, as the panel majority recognized, the obviousness of the constitutional violation here is even more apparent considering Defendants considered and planned Villarreal's arrest over months. *See Villarreal*, 44 F.4th at 371–72; *see also* ROA.169–71, ROA.174–76.

In sum, *Morrow* does not conflict with the panel majority. Faithfully applying the Supreme Court's "fair warning" standard, the panel majority correctly found the County Defendants have no qualified immunity after they arrested Villarreal for asking a police officer

questions while investigating and reporting the news. *Villarreal*, 44 F.4th at 371–72. There is no basis for en banc review.

## II. The Panel Majority Correctly Found That No Reasonable Officer Would Have Enforced Texas Penal Code § 39.06(c) to Criminalize Villarreal's Routine Journalism.

The County Defendants wrongly suggest that the panel majority "created confusion" over their failed reliance on Texas Penal Code § 39.06(c). *See* County PFR 4, 17–19. Defendants might prefer the Constitution to permit officials to violate it so long as they believe themselves to be enforcing a statute on the books. "But no statute may be enforced that violates the Constitution. Likewise, no officer of the law may hide behind an obviously unconstitutional statute to justify trampling on a citizen's fundamental liberties." *Villarreal*, 44 F.4th at 379 (Ho, J., concurring).

Of course, this rule does not require police officers and other officials to be legal scholars to successfully avail themselves of the qualified immunity defense. Instead, it simply means if a defendant had fair warning he could not enforce a state law under the circumstances without violating the Constitution, the defendant has no qualified immunity. Just as the government officials in *Leonard v. Robinson* had

no qualified immunity for hiding behind antiquated laws against swearing to arrest a critic,[5] the County Defendants may not employ qualified immunity to excuse hiding behind the derelict Texas Penal Code § 39.06(c) to arrest Villarreal for protected newsgathering and reporting.

What's more, the panel majority eliminated any possibility of confusion by invoking constitutional avoidance, reasoning that "it is far from clear that the officers can even state a plausible case against Villarreal under § 39.06(c) in the first place." *Villarreal*, 44 F.4th at 372. No reasonable officer would have enforced § 39.06(c) to criminalize Villarreal's routine journalism, as the panel majority correctly found. *Id.* at 372–73.

## A. The panel majority is correct that no reasonable official would have relied on the statute's "intent to benefit" element to criminalize Villarreal's journalism.

The County Defendants argue for en banc review based on their belief that § 39.06(c)'s "intent to benefit" element justified arresting Villarreal. County PFR 17–18; *see also* County Appellee's Br. 24–35. But

---

[5] 447 F.3d 347, 359-61 (6th Cir. 2007).

that argument is wrong for two reasons. First, as the panel majority reasoned, the Defendants could not "state a plausible case against Villarreal" because her reporting fell outside the element. Second, if her reporting did fall within the "intent to benefit element," it would be obviously unconstitutional to arrest her under the statute.

1. *Villarreal's reporting did not meet the statute's "intent to benefit" element.*

The panel majority reasoned that because "benefit" means "anything reasonably regarded as economic gain or advantage" under the Texas Penal Code, no reasonable officer could have found Villarreal's journalism met this definition. *Villarreal,* 44 F.4th at 372. That reasoning was correct. For one thing, the arrest warrant affidavits alleged Villarreal "intended to benefit" only because she wanted to "gain[] popularity in Facebook" by releasing the information Officer Goodman gave her before other news outlets. ROA.171 [¶ 92]. But as the panel majority notes, this makes no sense because Villarreal sought the information not to rush to publication, but to verify a source's information like any good journalist would. *Villarreal,* 44 F.4th at 372.

Further, nothing in the arrest warrant affidavits stated or even suggested that Defendants knew Villarreal received an occasional meal

or promotion fee. Thus, the County Defendants wrongly claim that they could have reasonably believed "that Villarreal was deriving an economic benefit from her Facebook journalism in the form of sponsors." County PFR 17 (citing ROA.437 (FN 6)) (quotation marks omitted). As the Supreme Court has made clear, "facts an officer learns after the incident ends" are not relevant to qualified immunity. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (*per curiam*).

### 2. It was obviously unconstitutional to enforce § 39.06(c) against Villarreal.

Even if a reasonable officer could find the law's "intent to benefit" element covered Villarreal's routine newsgathering and reporting, enforcing it against Villarreal violated the First Amendment. As Judge Ho explains in his concurrence: "[I]f a statute can't be reasonably construed to avoid a constitutional violation, that just means there's no avoiding the constitutional violation." *Villarreal*, 44 F.4th at 380 (Ho, J., concurring). And given the ample authority establishing a First Amendment right to ask public officials questions, any reasonable officer would have understood it would violate the First Amendment to arrest Villarreal for exercising that right, whether under § 39.06(c) or another law, like disorderly conduct. *Id.* at 370-71. Indeed, as the panel majority

reasons, "[i]f the government cannot punish someone for *publishing* the Pentagon Papers, how can it punish someone for simply *asking* for them?" *Villarreal,* 44 F.4th at 371 (emphasis in original) (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971) (*per curiam*)).

In short, any reasonable officer would have known that construing "intent to benefit" to cover Villarreal's journalism effectively criminalized journalism in defiance of basic First Amendment protections. By contrast, if one accepts the County Defendants' argument, officials could use § 39.06(c) to arrest pamphleteers, bloggers, and other citizens who peaceably ask the government for newsworthy information. The First Amendment is intended to prohibit such a result. *See Branzburg v. Hayes*, 408 U.S. 665, 681 (1972) ("[W]ithout some [First Amendment] protection for seeking out the news, freedom of the press could be eviscerated").

**B.    Florida Star and other authority demonstrate that no reasonable official would have relied on the "not been made public" prong of the statute to justify arresting Villarreal.**

The County Defendants also suggest en banc review is warranted because they reasonably relied on the "not been made public" element of § 39.06(c). County PFR 18. This is also wrong and provides no basis for

rehearing. The Supreme Court made clear in *The Florida Star v. B.J.F.* that if an official gives a citizen information about a matter of public interest, the government violates the First Amendment if it turns around and punishes the citizen for publishing the information. 491 U.S. 524, 535 (1989). Moreover, the Supreme Court has consistently rejected a state's attempt to assert privacy interests as grounds to punish the use of information that officials release. *Id.* at 531–32, 540–41; *Daily Mail,* 443 U.S. at 104–05.

These decisions clearly established that the First Amendment barred Defendants from using the pretext of "not been made public" to arrest Villarreal. The responsibility to safeguard any ostensibly non-public information began and ended with the Laredo Police Department. Any reasonable government official would have understood that the government cannot punish the recipient of information that an official volunteered.

In sum, the panel majority correctly found Villarreal's arrest was an obvious constitutional violation that affords the County Defendants no qualified immunity. Thus, there is no basis for en banc review on this issue.

## III. The Panel Majority Correctly Held That the Independent Intermediary Doctrine Does Not Shield Defendants from Liability.

Nothing in the panel majority's decision "ignore[s] the independent intermediary doctrine contradicting Supreme Court and Fifth Circuit precedent," as the County Defendants claim. To the contrary, the panel majority correctly looked to the Supreme Court's rule in *Malley v. Briggs*: "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Villarreal*, 44 F.4th at 375 (quoting *Malley*, 475 U.S. 335, 341 (1986)).

If a reasonable officer would have understood that arresting Villarreal for routine newsgathering violated the First Amendment, then no reasonable officer would have applied for the arrest warrants Defendants did. The panel majority got this right, pointing out that officials cannot base probable cause on impermissible standards like the exercise of a clear First Amendment right. *Id.* (citing *Mink v. Knox*, 613 F.3d 995, 1003–04 (10th Cir. 2010) (internal quotation omitted); *Swiecicki v. Delgado*, 463 F.3d 489, 498 (6th Cir. 2006)). By extension, this includes officials who help manufacture and sign off on arrest

warrant affidavits based on the exercise of protected newsgathering and reporting, like the County Defendants did. ROA.169–71, ROA.174–76.

Simply put, a warrant affidavit based on nothing more than the exercise of a clearly established constitutional right will always trigger the *Malley* rule, because it can never establish probable cause. And so, by holding the independent intermediary doctrine did not apply, the panel majority did not second guess the magistrate, as the County Defendants argue. *See* County PFR 20. Rather, the panel majority correctly reasoned that under *Malley*, the arrest warrant affidavits never should have reached the magistrate. No reasonable official could have found probable cause to ask for an arrest warrant against Villarreal, because the only claimed basis for probable cause was Villarreal's exercise of clear First Amendment rights. *See Villarreal*, 44 F.4th at 375. The panel majority correctly applied the *Malley* exception, and there is no basis for en banc review of this issue.

## IV. The Panel Majority Correctly Upheld Villarreal's Selective Enforcement Claim.

The County Defendants' final basis for seeking en banc review is that "the majority opinion incorrectly determined that Villarreal states a selective enforcement claim." County PFR 12–13, 19 n.3. But as with the

rest of its decision, the panel majority's reasoning on Villarreal's selective enforcement claim correctly applies the relevant standards.

The County Defendants do not question Villarreal's allegations that the Defendants harbored an improper motive to target Villarreal's exercise of her First Amendment rights. Instead, they suggest only that the panel majority overlooked Fifth Circuit precedent requiring a selective enforcement plaintiff to identify 'an example' of a similarly situated comparator who nonetheless was treated differently" County PFR 19 n.3. True enough, this Court before has asked that a selective enforcement plaintiff point to a specific comparator. *E.g.*, *Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018). Yet, as the panel majority pointed out, this Court has also explained that "when a case 'involves the application of an ordinance or statute, the plaintiff's and comparators' relationships with the ordinance at issue will generally be a relevant characteristic for purposes of the similarly-situated analysis." *Villarreal*, 44 F.4th at 376 (quoting *Lindquist v. City of Pasadena, Tex.*, 669 F.3d 225, 234 (5th Cir. 2012) (internal quotation omitted)).

Thus, the panel majority did not depart from this Court's precedent in reasoning that Villarreal showed enough for selective enforcement. As

the panel majority notes, Villarreal's lawsuit details a group of similarly situated persons—including other local journalists—who asked local officials for sensitive information but were not arrested under § 39.06(c). *Villarreal*, 44 F.4th at 376. And tracking the requirement that courts consider favorable inferences on Rule 12(b)(6) motions, the panel majority "ha[d] no difficulty observing that journalists commonly ask for nonpublic information from public officials, and that Villarreal was therefore entitled to make that same reasonable inference." *Id.* To that end, that Villarreal could not identify an exemplary similarly situated person at the pleadings stage, having no benefit of discovery, does not bar her selective enforcement claim.

This is the right result. Not only does it accord with this Court's precedent, but it also ensures that if officials single out critics and dissenters by criminalizing their exercise of First Amendment rights, those speakers can pursue an equal protection claim under § 1983. If those plaintiffs were to be categorically required to specify an example comparator at the pleadings stage, that remedy will all but disappear.

Such a result would impermissibly threaten expressive rights. As Judge Ho shares in his concurrence, "[t]here's no way the police officers

here would have ever enforced § 39.06(c) against a citizen whose views they agreed with, and whose questions they welcomed. And that's what disturbs me most about this case—the unabashedly selective behavior of the law enforcement officials here." *Villarreal*, 44 F.4th at 382 (Ho, J., concurring).

Without a remedy against that sort of selective behavior, officials will lack accountability for abusing the criminal laws to single out and punish speakers. And the opportunities for that abuse are rampant with how expansive modern penal codes are. Indeed, as Justice Gorsuch explained recently, "criminal laws have grown so exuberantly and come to cover so much previously innocent conduct that almost anyone can be arrested for something. If the state could use these laws not for their intended purposes but to silence those who voice unpopular ideas, little would be left of our First Amendment liberties . . ." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1730 (2019) (Gorsuch, J., concurring in part and dissenting in part).

The panel majority's opinion—consistent with this Court's precedent—will help deter that abuse and ensure speakers can hold

officials accountable when they selectively enforce laws to silence their critics.

## CONCLUSION

The panel majority faithfully applied the Supreme Court's qualified immunity doctrine and long-established First Amendment principles in finding the County Defendants have no qualified immunity after arresting Villarreal for routine journalism. Likewise, the panel majority correctly found Villarreal stated a selective enforcement claim, as she showed Defendants arrested her under § 39.06(c) despite never arresting another journalist under the law in its 23-year history. En banc review is not warranted, and the Court should deny the County Defendants' petition for en banc rehearing.

Dated: September 19, 2022

Respectfully Submitted,

/s/ JT Morris
JT Morris
FOUNDATION FOR INDIVIDUAL
    RIGHTS AND EXPRESSION
700 Pennsylvania Ave. S.E., Ste. 340
Washington, D.C. 20003
Tel: (215) 717-3473
jt.morris@thefire.org

Darpana Sheth
Conor T. Fitzpatrick
FOUNDATION FOR INDIVIDUAL
    RIGHTS AND EXPRESSION
510 Walnut Street, Ste. 1250
Philadelphia, PA 19106
Tel:   (215) 717-3473
darpana.sheth@thefire.org
conor.fitzpatrick@thefire.org

## CERTIFICATE OF COMPLIANCE

1.     This response complies with the type-volume limitation of Fed. R. App. P. 35(b)(2) because this response contains 3,876 words, excluding the parts of the brief exempted by Local Rule 28.3 and Fed R. App. P. 32(f).

2.     This response complies with the typeface and typestyle requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because this response has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Century Schoolbook font.

*/s/ JT Morris*
JT Morris

## CERTIFICATE OF SERVICE

This certifies that on September 19, 2022, in compliance with Rules 25(b) and (c) of the Federal Rules of Appellate Procedure, the undersigned served the foregoing via the Court's ECF filing system on all registered counsel of record.

*/s/ JT Morris*
JT Morris