

December 11, 2024

**<u>Via E-File</u>**
Mr. Lyle W. Cayce, Clerk of Court
United States Court of Appeals for the Fifth Circuit

    **RE: Villarreal v. City of Laredo, No. 20-40359**

Dear Mr. Cayce:

    Please accept and distribute this supplemental letter brief from Appellant Priscilla Villarreal responding to the Court's request, on remand from the Supreme Court, for the parties to address how *Gonzalez v. Trevino*, 602 U.S. 653 (2024) (per curiam), may affect this case.

    *Gonzalez* supports reversal. To start, *Gonzalez* provides an additional path for the Court to reverse the dismissal of Villarreal's First Amendment retaliation claim, because her allegations show Defendants singled her out for arrest under a derelict statute, no matter if they had probable cause. *Id.* at 658. What's more, *Gonzalez* aligns with a key reason for reversal: State criminal statutes are not cover for officials to violate First Amendment freedoms. And when officials like Defendants deploy a state statute to violate undoubted First Amendment rights—whether arresting a journalist for routine news reporting or selectively targeting a critic—qualified immunity does not shield them.

**I.**   ***Gonzalez* echoes many of this case's facts, with one difference making reversal here especially compelling.**

    The similarities between Sylvia Gonzalez's plight and Villarreal's are striking. Both were outspoken critics of local officials. *Gonzalez*, 602 U.S. at 654; ROA.161-62. The officials they criticized each responded by engineering the woman's arrest. *Gonzales v. Trevino*, 42 F.4th 487, 489–90 (2022), *vacated*, 602 U.S. 653; ROA.165–76. And in both cases, Gonzalez and Villarreal alleged that officials dusted off derelict Texas criminal statutes, never enforced against similarly situated individuals,

to devise and obtain arrest warrants to deploy against their critic. *Gonzales*, 602 U.S. at 656–57; ROA.170–76, 181–82.

Under Gonzalez's alleged facts, the Supreme Court vacated this Court's holding that she could not maintain a First Amendment retaliation claim. *Gonzales*, 602 U.S. at 658. The similar facts here support reversal, as Villarreal explains below.

Still, there remains one key difference highlighting why Defendants' First Amendment violations are even more egregious than the one Gonzalez endured. Gonzalez conceded probable cause, based on her non-expressive conduct. *Id.* at 657. By contrast, Villarreal has shown a lack of probable cause, since the only basis Defendants provided for arresting Villarreal was routine journalism the First Amendment protects. *E.g.*, Appellant's Br. 29–30; *Mink v. Knox*, 613 F.3d 995, 1003–04 (10th Cir. 2010) (affirming that probable cause cannot rest on "speech protected by the First Amendment") citing *Wayte v. United States*, 470 U.S. 598, 608 (1985))).

Thus, because Defendants lacked probable cause, the principle from *Nieves v. Bartlett* that "probable cause should generally defeat a retaliatory arrest claim," 587 U.S. 391, 406 (2019) is no hurdle for Villarreal's First Amendment retaliation claim (or her direct First Amendment violation claim).

## II. *Gonzalez* provides an additional path to reversal.

Even if Defendants had probable cause to arrest Villarreal, *Gonzalez* confirms why it would not bar Villarreal's retaliatory arrest claim. *Gonzalez* clarifies *Nieves*'s rule that probable cause does not bar a retaliatory arrest claim when a plaintiff presents objective evidence that the arrest occurred in "circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Gonzalez*, 602 U.S. at 658 (quoting *Nieves*, 587 U.S. at 406). In clarifying that rule, the Supreme Court rejected the cramped view that "objective evidence" requires "virtually identical and identifiable comparators." *Id.*

Instead, the Supreme Court confirmed a plaintiff can meet their burden with evidence showing "no one has ever been arrested for engaging in a certain kind of conduct—especially when the criminal

2

prohibition is longstanding and the conduct at issue is not novel," because that evidence "makes it more likely that an officer has declined to arrest someone for engaging in such conduct in the past." *Id*. Thus, Gonzalez's allegations that the criminal statute in her case "had never been used in the county to criminally charge someone for trying to steal a nonbinding or expressive document" could sustain her retaliatory arrest claim, even though she conceded probable cause. *Id*. at 657 (cleaned up).

So too with Villarreal's claim, even assuming probable cause existed to arrest her under Texas Penal Code § 39.06(c). She alleged how Defendants enforced the decades-old statute against her for asking a police officer questions while reporting the news. ROA.169–72; ROA.181–82 [¶ 141]. In other words, they enforced a "longstanding" "criminal prohibition" against "conduct . . . not novel." *Gonzalez*, 602 U.S. at 658. Villarreal also detailed how local officials had never enforced Section 39.06(c) *at all*, let alone against "those who had asked for or received information from local law enforcement officials," which people do every day in Laredo. ROA.174 [¶ 106]; ROA.181-82 [¶ 141]; ROA.187 [¶ 177].[1]

Remand to the district court is unnecessary to assess Villarreal's objective evidence. As Judge Higginson observed on rehearing en banc, Defendants' alleged "conduct falls squarely within the *Nieves* exception." *Villarreal v. City of Laredo*, 94 F.4th 374, 404 (2024) (Higginson, J., dissenting), *vacated sub nom.*, *Villarreal v. Alaniz*, No. 23-1155, __ S. Ct. __, 2024 WL 4486343 (Oct. 15, 2024). *Gonzalez* cements that point and provides another reason for the Court to reverse.[2]

---

[1] This same objective evidence shows why the Court should also reverse Villarreal's Fourteenth Amendment selective enforcement claim. Appellant's Br. at 46–49.

[2] The panel majority noted that circuit precedent requiring Villarreal to allege subjective chilling injury impeded her retaliation claim. *Villarreal v. City of Laredo*, 44 F.4th 363, 374 (2022), *reh'g en banc granted*, 52 F.4th 265 (5th Cir. 2022). Villarreal urges the Court to reconsider that conclusion. First, Villarreal alleged how "constantly operating under this fear [of retaliation] hindered and curtailed Villarreal's ability to exercise her protected First Amendment rights," showing subjective chill. ROA.183 [¶147]. Second, *Nieves* does not mention a subjective chilling injury when describing the contours of a retaliatory arrest claim. 587 U.S. at 398–400. In any event, the Court should do away with the subjective chill rule on which it stands apart from its sister circuits. Appellant's En Banc Br. at 46–50; Dkt. 280, En Banc Br. of *Amici Curiae* Journalists.

## III. *Gonzales* embraces the principle that officials cannot hide behind state statutes to violate First Amendment freedoms.

Over and over, Defendants have insisted Section 39.06(c) gave them cover to violate Villarreal's First Amendment rights. Not so, as Villarreal has explained at every stage. If state criminal statutes were unassailable cover for First Amendment violations, it would render meaningless the linchpin of Section 1983: "under the color of any statute . . . of any State." Even worse, it would imperil the First Amendment altogether. "All the government would have to do is to enact some state statute or local ordinance forbidding some disfavored viewpoint—and then wait for a citizen to engage in that protected-yet-prohibited speech." *Villarreal*, F.4th at 414 (Ho, J., dissenting). It is no surprise, then, that several circuits have rejected the same arguments Defendants have made. Appellant's Br. 19–21; Dkt. 338, Appellant's R. 28(j) letter (Jul. 26, 2023).

*Gonzalez* reaffirms that officials do not escape Section 1983 claims for arresting their critics just because a state statute might authorize the arrest. Even more, it confirms that principle is broad. If officials deploy a statute to single out a critic for an arrest they otherwise never make, *Gonzalez* ensures the critic can sue for First Amendment retaliation, even if her conduct checks the probable cause boxes. 602 U.S. at 658.

## IV. Defendants are not entitled to qualified immunity.

Defendants enforced Section 39.06(c) directly against Villarreal's routine journalism, and also singled her out for arrest under the statute because she criticized them. Qualified immunity does not shield them from their two-headed attack on the First Amendment freedoms to criticize the government, ask its officials questions, and publish what they volunteer. As Villarreal has established, settled precedent and basic constitutional principles would have given reasonable officials fair warning that arresting her would violate the Constitution. Appellant's Br. 32–36; Appellant's En Banc Br. 17–21, 26–30.

Defendants may argue that because *Gonzalez* post-dates Villarreal's arrest, it muddles the fair warning analysis. They would be wrong. True enough, when assessing qualified immunity over a retaliatory arrest claim, courts must do more than define the First

4

Amendment right against retaliation "as a broad general proposition." *Reichle v. Howards*, 566 U.S. 658, 665 (2012). But *Gonzalez*'s holding does not muddle the qualified immunity question, for two reasons.

First, a host of precedent would have applied "with obvious clarity" to give fair warning that singling out Villarreal under Section 39.06(c) would violate the First Amendment. *See Hope v. Pelzer*, 536 U.S. 730, 740 (2002) (explaining the fair warning standard). Start with a well-settled principle: Officials violate the Constitution when they selectively enforce laws out of "the desire to prevent the exercise of a constitutional right," including "retaliation for an attempt to exercise one's . . . right to free speech." *Bryan v. City of Madison*, 213 F.3d 267, 277 & n.18 (5th Cir. 2000). And that's true even if they have probable cause to arrest. *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997) (citing *Wayte*, 470 U.S. at 607; *Oyler v. Boles*, 368 U.S. 448, 455–56 (1962)).

With that in mind, and because officials have long known directly arresting critics violates the First Amendment, *City of Houston v. Hill*, 482 U.S. 451, 462–63 (1987), they had fair warning in 2017 that singling out a critic for arrest under a derelict statute would violate the First Amendment. And of course, a line of Supreme Court decisions confirmed Villarreal's right to ask police questions while reporting the news. Appellant's Br. 32–36. Having months to consider this—along with the First Amendment bar against retaliation for speech—Defendants are not entitled to qualified immunity after singling out Villarreal for arrest. *See Gonzalez*, 42 F.4th at 506–07 (Oldham, J., dissenting) (discussing why officials making unhurried First Amendment violations might "not get the same qualified immunity benefits that cops on the beat might get").

Second, *Nieves* and its "objective evidence" standard centered on causation. 587 U.S. at 402. But causation is an issue distinct from qualified immunity, which focuses on the constitutional *violation*, not the contours of a resulting claim. Thus, what evidence can prove causation (*Gonzalez*'s focus) has no bearing on qualified immunity. Defendants had fair warning that singling out Villarreal for arrest under Section 39.06(c) would violate the First Amendment, and the inquiry stops there.

For these reasons and those Villarreal has provided in her briefing and argument, the Court should reverse and remand.

                                    Respectfully,

                                    JT Morris

                                    Foundation for Individual Rights and Expression

                                    *Counsel for Appellant Priscilla Villarreal*

cc:    All Counsel of Record (via E-File Service)